UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CRIMINAL ACTION NO.  4:09CR-2-M

UNITED STATES OF AMERICA                                                               PLAINTIFF

VS.

DANIEL B. LEWIS                                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions by Defendant, Daniel B. Lewis, for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 and new trial pursuant Fed. R. Crim. P. 33 [DN 22] [DN 23]. The Government filed responses [DN 24, DN 25]. The Defendant filed replies [DN 26, DN 27]. Fully briefed, this matter is ripe for decision.

**I. MOTION FOR JUDGMENT OF ACQUITTAL [DN 22]**

The Defendant seeks a judgment of acquittal on his conviction for conspiracy to violate the Safe Drinking Water Act, to make false statements to the Environmental Protection Agency, and to defraud the United States as charged in Count 1 of the Indictment. At the end of the Government's case and again at the close of the evidence, Defendant moved pursuant to Federal Rules of Criminal Procedure 29 for a judgment of acquittal. Defendant again renews his motion for judgment of acquittal arguing that the Government failed to establish proof, beyond a reasonable doubt, that an illegal "agreement" was reached between Daniel Lewis and the two identified co-conspirators, Stanley VanSickle and Michael Wolfe.

**A. Standard**

A Rule 29 motion for judgment of acquittal "is a challenge to the sufficiency of the evidence." United States v. Jones, 102 F.3d 804, 807 (6th Cir. 1996). "Evidence is sufficient to

support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir. 1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see also United States v. Humphrey, 279 F.3d 372, 378 (6th Cir. 2002)); United States v. Harrod, 168 F.3d 887, 889-90 (6th Cir. 1999). "In ruling on a sufficiency of the evidence challenge, the Court does not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury." United States v. Cannady, 2006 WL 1718193, *2 (E.D. Ky. June 21, 2006).

**B. Discussion**

Lewis moves for judgment of acquittal arguing that the Government failed to establish proof, beyond a reasonable doubt, that an illegal "agreement" was reached between him and the two identified co-conspirators, Stanley VanSickle and Michael Wolfe. Lewis contends that the Government did not prove that he made some type of agreement or came to a mutual understanding to cooperate with either Wolfe or VanSickle to violate federal law. Lewis claims that at most the Government's proof revealed that as the supervisor Danny Lewis was the instigator of the violations and simply directed these two employees to do certain acts that violated federal law. Thus, Lewis contends that the Government failed to prove that VanSickle and Wolfe were both knowing and voluntary participants in a criminal agreement with Lewis.

Under 18 U.S.C. § 371, it is illegal for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose." "To prove conspiracy, the government must establish: (1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt

2

act constituting actual participation in the conspiracy." United States v. Hughes, 505 F.3d 578, 593 (6th Cir. 2007)(citing United States v. Martinez, 430 F.3d 317, 330 (6th Cir. 2005); United States v. Jamieson, 427 F.3d 394, 402 (6th Cir. 2005)). "'A tacit or mutual understanding among the parties to a conspiracy is sufficient to establish the agreement[, and] conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan.'" Id. (quoting United States v. Walls, 293 F.3d 959, 967 (6th Cir. 2002) (internal citations omitted)). The government is not required "to prove that each member of a conspiracy knew every detail or the identity of all the other members involved in the conspiracy." United States v. Crossley, 224 F.3d 847, 856 (6th Cir. 2000)(citing United States v. Rogers, 118 F.3d 466, 478 (6th Cir. 1997)). "The government, however, must show that a particular defendant knew the object of the conspiracy and 'voluntarily associated himself with it to further its objectives.' " Id. (quoting United States v. Gibbs, 182 F.3d 408, 421 (6th Cir. 1999)). See also Jamieson, 427 F.3d at 402.

At trial, the Government produced evidence to support the conclusion that Lewis, Wolfe and VanSickle had a mutual understanding or agreement to rig wells to pass M.I.T. tests by installing bypass devices, knew of the object of the conspiracy, and voluntarily associated themselves with it to further its objectives. Jamieson, 427 F.3d at 402. Wolfe testified that Lewis directed him to fabricate or weld a pipe, that he understood that the purpose of the pipe was to bypass the M.I.T. tests to insure that the well passed the test, and that he fabricated or welded the pipe. Similarly, VanSickle testified that he pre-tested the wells scheduled for a M.I.T. test and reported to Lewis if the well failed the pre-test. If a bypass device had already been installed on the well, VanSickle would repair it. If a bypass device had not already been installed, Lewis would arrange for its manufacture and VanSickle would hook the device to the well with the help of Danny or Steven

3

Lewis. VanSickle testified that he understood the purpose of the bypass device and installed or repaired such devices pursuant to Lewis's instruction. Moreover, VanSickle testified that he actually performed one of the M.I.T. tests by himself for government officials. A jury could reasonably infer that this evidence supports a conclusion that Lewis was involved in a conspiracy with VanSickle and Wolfe to manufacture and install illegal devices for the purpose of falsifying or rigging M.I.T. tests conducted by the federal government in violation of federal law.

Lewis argues that because Wolfe and VanSickle were employees or subordinates of Lewis, followed orders given by Lewis, and only engaged in such conduct for fear of losing their jobs, they could not conspire with Lewis to violate federal law. Lewis offers no support for this argument. As the Sixth Circuit noted in Susnjar v. United States, 27 F.2d 223 (6th Cir. 1928), "[a]n employee is not immune from punishment for his participation in criminal conspiracy upon any such idea as that his employment required him to engage therein." Id. at 224 (defendants were convicted of conspiracy to violate the Immigration Act). Following the reasoning in Susnjar, the Eleventh Circuit likewise held "[i]f [the defendant] was aware of the illegality of his conduct, the fact that it was authorized by a superior clearly cannot insulate him from criminal liability." United States v. Gold, 743 F.2d 800, 823-24 (11th Cir. 1984)(defendant convicted of conspiracy to defraud the government raised a "following orders" defense). See also United States v. Rhoad, 36 F. Supp.2d 792 (S.D. Ohio 1998).

Similarly, in United States v. Dwyer, 238 Fed. Appx. 631, 643 (1st Cir. 2007), the First Circuit addressed a similar argument. The defendant claimed that her involvement in the conspiracy charge consisted of "reluctant acquiescence" rather than "voluntary participation," and therefore she could not be found to have entered into an agreement to violate the law. The First Circuit noted that

"[i]t is true she may have been in part influenced by the fear that if she did not go along with her supervisors' directions, they would retaliate against her; but there was no evidence of threats, and a general concern of this kind would fall short of precluding a finding of conspiracy." Id. at 643 (citing United States v. Freeman, 208 F.3d 332, 342 (1st Cir. 2000) (a generalized fear of harm is no defense to a conspiracy charge)). Likewise, the Sixth Circuit recognizes that a defense of coercion or duress requires an immediate threat of death or serious bodily injury. See United States v. Johnson, 416 F.3d 464, 468 (6th Cir. 2005). Lewis presented no evidence at trial that either Wolfe or VanSickle were subject to such coercion or duress. Contrary to Lewis's argument, both Wolfe and VanSickle acknowledged that they were instructed by Lewis either to weld a pipe or to install a bypass device, they understood that the purpose of the device was to bypass the M.I.T. test to ensure that the well passed the test, and voluntarily performed the task. This evidence is sufficient to support a finding by the jury of an agreement.

For the reasons set forth above, the Court finds that a rational trier of fact could have found beyond a reasonable doubt that the Government had proven the elements of the conspiracies alleged in Count 1 of the Indictment with respect to Lewis. Accordingly, the Court denies the Defendant's motion for a judgment of acquittal.

## II.   MOTION FOR NEW TRIAL [DN 23]

The Defendant requests a new trial pursuant to Federal Rules of Criminal Procedure 33 arguing that the Assistant United States Attorney engaged in misconduct during his closing argument by misrepresenting Kevin Wolfe's testimony.

### A. Standard

Rule 33 provides that "[u]pon a defendant's motion, the court may vacate any judgment and

grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision of whether to grant a new trial is committed to the "sound discretion of the trial judge." U.S. v. Barlow, 693 F.2d 954, 966 (6th Cir. 1982); United States v. Pierce, 62 F.3d 818, 823 (6th Cir. 1995). When presented with a Rule 33 motion, the district court may weigh the evidence and assess the credibility of the witnesses. "It has often been said that he/she sits as a thirteenth juror." United States v. Solorio, 337 F.3d 580, 589 n. 6 (6th Cir. 2003) (internal citations omitted). However, "new trial motions are disfavored and should be granted with caution." U.S. v. Willis, 257 F.3d 636, 645 (6th Cir. 2001) (citation omitted). The trial court should exercise this discretion "only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." United States v. Ashworth, 836 F.2d 260, 266 (6th Cir. 1988). The Defendant bears the burden of proving that a new trial should be granted. United States v. Davis, 15 F.3d 526, 531 (6th Cir. 1994); U.S. v. Turner, 995 F.2d 1357, 1364 (6th Cir. 1993). Based on this standard, the Court shall address Defendant's arguments in support of their motion for new trial.

**B. Discussion**

Lewis argues that the Assistant United States Attorney engaged in misconduct during his closing argument by misrepresenting Kevin Wolfe's testimony. At trial, Wolfe testified that he had been directed by Danny Lewis to fabricate or weld an illegal pipe for the purpose of bypassing the M.I.T. tests. He described the pipe as being approximately five to six feet in length, containing caps at either end, and being subject to pressurization. Wolfe stated that he did not know who put the device in the ground. On cross-examination, Wolfe admitted that he had made surge pots at the direction of Danny Lewis which were approximately four to six feet in length. Wolfe also testified that he did not know if the pipe he welded was put in the ground. On re-direct, Wolfe testified that

he was aware that other injection wells were rigged at RoseClaire Oil. Wolfe further testified that he had fabricated a device similar to the illegal bypass device displayed in Government's Exhibit 32, only shorter, for Mr. Lewis to put into the ground.

According to Defendant, the Assistant United States Attorney in his rebuttal closing argument characterized Wolfe as testifying that the illegal pipe wasn't a surge pot or chemical pot. Specifically, Defendant objects to the AUSA Ream's statement:

> Mr. Wolfe was having none of that when he got back on redirect, because he said, I remember constructing those pipes, but that is not what Mr. Lewis told me to do. Mr. Lewis told me to construct a different pipe, and that's the one that was placed in the ground. And I knew from talking to Mr. Lewis that the purpose of that pipe was to fake the MIT test results.

(Defendant's Motion for New Trial, Exhibit 1.) The Defendant argues that this mischaracterization, coupled with the jury's request for the testimony of Wolfe, warrants a grant of a new trial.

The Sixth Circuit employs a two-prong test when reviewing a claim of prosecutorial misconduct: "First, [the court] determine[s] whether the prosecutor's conduct or comments were improper. Second, [the court] determine [s] whether the impropriety amounts to reversible error...." United States v. Talley, 194 F.3d 758, 764 (6th Cir. 1999). See also United States v. Watts, 2008 WL 449983 (6th Cir. February 20, 2008). The Court considers four factors in determining whether a statement warrants the grant of a new trial: "(1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused." United States v. Henry, 545 F.3d 367, 376 (6th Cir. 2008). Courts "afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone

7

do not justify reversal where the proceedings were 'otherwise fair.'" Id. at 377.

After a review of Wolfe's testimony, the Court does not believe that the AUSA's characterization of the testimony of Kevin Wolfe was improper. Wolfe testified that he was instructed by Mr. Lewis to weld a pipe, the purpose of the pipe was to bypass M.I.T. tests being conducted for the EPA, and that contrary to Defense counsel's assertions at trial, the surge pots and chemical pots Wolfe had also constructed at Defendant's direction were not the same thing as the bypass device he fabricated.

Even if the AUSA's statement regarding the pipe being placed in the ground was improper, this statement was not flagrant and does not warrant reversal on appeal. The AUSA's statement does not appear to be a deliberate attempt to mischaracterize Wolfe's testimony. At trial, it was uncontested that someone had buried M.I.T. bypass devices and the purpose for which they had been buried. In fact, the Government presented evidence that VanSickle, Daniel Lewis, and Steven Lewis were the individuals that buried some of those devices during the time period in question. Furthermore, the Court specifically instructed the jury that "[a]rguments and statements by lawyers are not evidence." (Jury Instructions at 3.) For these reasons, the Court denies Defendant's motion for new trial.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motions by Defendant, Daniel B. Lewis, for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 and new trial pursuant Fed. R. Crim. P. 33 [DN 22] [DN 23] are **denied**.

cc: counsel of record